Affirm and Opinion Filed June 11, 2014.

In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00898-CR

### BRANDON LAWRENCE COOPER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

## On Appeal from the 401st Judicial District Court
## Collin County, Texas
## Trial Court Cause No. 401-81168-2011

## MEMORANDUM OPINION
Before Justices O'Neill, Myers, and Justice Brown
Opinion by Justice Brown

Brandon Lawrence Cooper was convicted, following a trial before the court, of robbery. The trial court assessed punishment, enhanced by two prior felony convictions, at thirty-five years' imprisonment. In his sole issue, appellant contends the evidence is legally insufficient to support the conviction. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

On the morning of July 21, 2010, two men robbed the First National Bank Southwest (the Bank) in Plano, Texas.

Shawn Harasimo, Cade Woolbright, and Ginger Herrick testified they were all employees of the Bank and were working on the afternoon of July 20, 2010, the day before the robbery. Two young African-American men came into the Bank that afternoon, about an hour or so apart. The men did not fit the Bank's "normal customer demographic" and asked questions about CD

rates that were unusual for young customers. Harasimo testified the first man also asked questions about janitorial jobs and the Bank's operating hours. Neither man stayed long. The men's almost verbatim questions and their very short time in the Bank raised a red flag and led Harasimo, Woolbright, and Herrick to believe the Bank had been cased for a robbery. Therefore, Herrick had Woolbright notify the employees who would open the Bank the next morning to be on the alert for a robbery. Woolbright sent a text to Tracy Biscarro warning her to be alert and prepared in the event of a robbery. Harasimo and Woolbright identified State's Exhibit nos. 6 and 7 as being the first man who entered the Bank and State's Exhibit nos. 8 and 9 as being the second man who entered the Bank. Herrick identified appellant in open court as being the first man who entered the Bank on July 20, 2010.

Tracy Biscarro testified she was working as a teller at the Bank on July 21, 2010. At about 9:10 a.m. that morning, two African-American men entered the Bank running. Both men were dressed in black and wore black masks. One of the men ran in to the lobby while the other held the door. The first man approached Biscarro's station while the second remained by the door and held it open. The first man pointed a gun at Biscarro and told her she had ten seconds to give him all the money she had. The robber then started to "count down" and told Biscarro to hurry. He threatened to shoot Biscarro if she did not work fast enough and give him all the money she had in the teller drawer. Biscarro said she was in fear for her life because she believed gun was real and that the robber would shoot her.

Biscarro put all the money she had into a bag the robber had given her. Biscarro believed she gave the man less than $2,000. Biscarro testified the money included "bait money," which is money that goes out in the event of a robbery. The serial number, year, and plate number of the bait money is recorded on a log. The bait money is included in a dye pack. A dye pack has a sensor that will cause the dye pack to detonate when it leaves the building. She identified State's

-2-

Exhibit no. 2 as a picture of a dye pack and State's Exhibit no. 3 as the "Bait/Dye Money Log" on which the serial numbers were recorded. Biscarro testified that she originally was not going to put the dye pack with the bait money in the bag because she was fearful of the robber's gun pointed at her. However, the robber looked into the drawer and saw what he believed to be additional money that Biscarro had not given him. He again threatened to shoot Biscarro, so she put the bait money into the bag with the other money. The two men left together, but Biscarro did not see which direction they went. After the men left the Bank, Biscarro notified her coworkers of the robbery and the police were called. Biscarro stated that State's Exhibit no. 1, a gun, looked like the gun the robber used.

Sarah Vazquez testified she was working the drive-through window at the Bank on the morning of July 21, 2010. She heard loud voices in the lobby, describing it as a man screaming and counting. Vazquez looked towards that direction and saw Biscarro running towards her. Biscarro pushed Vazquez to the side and said she had just been robbed. Biscarro was very upset and shaky. Vazquez looked out the large drive-through window and saw a man running east through a parking lot. She noticed he had a bag in his right hand, and he was holding the bag close to his body. Vazquez saw a "poof" and then saw red dye everywhere. The man started "whaling his hands around," and continued running, but now held the bag out away from his body. The man was wearing dark clothing, what looked like a hoody, and black jeans. He appeared to be about 5'8" or 5'9".

Harasimo testified he was working at the Bank on the date of the robbery. Harasimo heard the door chime, but did not look up because the individual did not approach his desk. Harasimo heard yelling and counting. Harasimo heard a man say he was going to shoot Biscarro if she did not give him all the money by the time he had counted down. Harasimo opened his drawer to get to his silent alarm, but was afraid to "do it" because the robber was still in the

building. Harasimo did not want to do anything that would put Biscarro in further danger. Harasimo could see the man at the teller station, but could not see anyone else in the Bank. Harasimo activated the alarm as the robber was leaving the Bank.

Ginger Herrick testified she was the manager of the Bank. Because of what had happened on July 20, 2010, on the morning of the robbery, Herrick had a meeting with employees about procedures and what to do in the event of a robbery. Herrick testified the Bank had not been open long when the robbery began. She saw a person wearing dark colors, completely hooded, with a gun. As the robbers came in, they began yelling for everyone to get down and continued to point a gun at Biscarro's face. The robber said he would shoot Biscarro if she did not comply and she had ten seconds to fill the bag with money. Herrick called 911. While she was on the phone, she saw Biscarro flee to the back of the teller line. At that time, Herrick saw that there were two people involved in the robbery because she saw the two run out the door. Herrick noticed a telephone directory holding the door open. She kicked it away so that the door locks could engage.

Gary Davenport testified he is a field engineer for Marriott Hotels and Resorts. On July 21, 2010, he was working at the Courtyard hotel at the corner of Preston and Plano Parkway. As Davenport was coming down from the roof and disposing of some filters in the trash, he noticed two African-American men wearing black sweat jackets with hoods, which seemed "kind of strange" because it was about 90 degrees outside. One of the men was about 5'8" to 5'9" and about 180 pounds; the other was about 5'6" and about 150 pounds. Davenport did not see masks on their faces. The men were walking until they reached the edge of the property along the parking lot. Then, all of a sudden, a red powder substance came out of one of their jackets, and that man started trying to "pat the jacket to put it out." The men saw Davenport and a

-4-

housekeeper who had come of the Courtyard, and took off "in a dead run" east through the parking lot towards the Motel 6 that was east of the Courtyard.

Plano police sergeant Marybeth Jones testified that she responded to the bank robbery on July 21, 2010. Jones and other officers gathered information from witnesses as to the direction the robbery suspects had run. Jones also had information from a teller that a red puff of smoke was seen coming from one of the suspect's jackets. Jones drove her police vehicle in the direction the suspects had taken. When she reached the Motel 6, she parked, walked back to a traffic circle then back to her vehicle. Jones did not see anyone matching the descriptions she had. However, she did notice a bright red two-by-six-inch item that looked like a piece of electronics painted red on the ground next to a dumpster in the northeastern corner of the Motel 6 on Plano Parkway. Jones identified State's Exhibit no. 2 as the dye pack she found. The red dye pack shown in State's Exhibit no. 2 was collected as evidence by Plano police officer Jeff Deitemeyer.

Plano police officer Harold Hilliard testified that he responded to the bank robbery on July 21, 2010. Hilliard took Biscarro's oral and written statements. Hilliard testified that Biscarro was very nervous and upset and said she had been threatened with a gun. The robbery suspects were described to him as two black males and he was told they were traveling east of the Bank towards the Marriott and Motel 6.

Plano police officer Jesse Muse testified he assisted on a call on July 23, 2010 at about 2:00 in the morning at room 243 of the Motel 6. The room was registered to an individual named Byron Yarbrough, for whom they had a felony arrest warrant for the robbery and who they believed might be armed. Muse's superiors wanted him to knock on the door and see who was in the room. Muse and Plano police sergeant Bogacki went to the room, and Muse knocked on the door. A man in the room asked who was at the door, and Muse identified himself as

police. A young black male, who identified himself as Brandon Cooper, opened the door. Muse identified appellant in open court as the individual in the Motel 6 room. The officers asked appellant if he had heard any screaming, explaining the police had received a disturbance call. Appellant said he did not know anything about a disturbance. He also told the officers his girlfriend was in the room with him. The officers asked appellant if they could come into the room to make sure everyone was alright, and appellant consented. The officers did not find Yarbrough in the room. They did, however, smell the odor of marijuana and saw a bong with marijuana residue in the room. There were "a lot of scattered clothes" and "some black ski masks." The officers asked appellant about Yarbrough's location. Appellant's girlfriend Patricia McLeod was able to contact Yarbrough. Muse ultimately arrested appellant for possession of drug paraphernalia. He relayed the information about the ski masks to another officer.

Byron Yarbrough testified that he pleaded guilty to robbing the Bank on July 21, 2010 and has been sentenced. Yarbrough further testified that appellant committed the July 21, 2010 bank robbery with him. Yarbrough identified appellant in open court. Yarbrough testified that he had rented the room at the Motel 6 on July 20, 2010 using appellant's money. The room was in Yarbrough's name because appellant said he did not have any identification. At about 3:00 p.m. the day before the robbery, appellant had called Yarbrough and said he needed to get back to the motel "right away." When Yarbrough got back to the motel, appellant told Yarbrough to go to the Bank "two buildings down" and walk around in there and ask for information on credit cards. Yarbrough asked appellant why, and appellant said not to worry about it and to return to the motel when he was done. Yarbrough went to the Bank at about 4:00 that day, which was near closing time. No one else was in the Bank. Yarbrough asked to speak to someone about getting a credit card. When he left the Bank, he returned to the motel. When Yarbrough returned to the motel, he learned appellant had also been at the Bank and that he had seen "a lot

of cash on the counter that they [were] counting out." Appellant said he wanted to rob the Bank, but he needed Yarbrough's help. Although Yarbrough initially said he did not want to help, he eventually agreed. The two planned to go in the morning when there were would not be many people in the Bank. Appellant said he had some sweatshirts, masks, gloves, and a pair of black pants so they would not be identified. Yarbrough testified appellant's two or three suitcases were in the motel room. Yarbrough said his own clothes were in an orange backpack or in storage. Yarbrough testified that both he and appellant stayed the night of July 20 at the motel. The next morning they got dressed in the black clothing, gloves, and mask, and appellant grabbed a phone book from the room to hold the Bank door open. Appellant gave Yarbrough a toy "cowboy" gun to use. Appellant told Yarbrough to "go in, get the money and come back out, and [appellant] would hold the door and make sure nobody came in or went out."

Yarbrough went into the Bank and told the woman at the counter to give him "the money, you have ten seconds." She put the money in a bag. He picked up the gun which he had dropped on the counter while getting the money in the bag and ran out the door that appellant was still holding open. They ran back to the motel and "jumped through the window." Appellant then closed the window and the blinds. Yarbrough testified that he did not notice anything while he was running, but when he got to the motel room, he noticed his face was beginning to burn. It was then he dumped the money out of the bag and saw that it was all red. Appellant took the dye pack and threw it out of the window. Appellant then began berating Yarbrough from getting the "wrong money." Appellant tried to wash the red dye off the money in the bathroom sink, but it did not come off most of the money. He then tore up that money and flushed in down the toilet.

Yarbrough also testified that appellant gave him some of the money and appellant took pictures of the money as it was drying out and also of the two men holding the money.

-7-

Yarbrough identified State's Exhibit nos. 11 through 15 as the photos appellant took. Yarbrough specifically identified State's Exhibit no. 11 as being a picture of appellant and testified appellant was in State's Exhibit nos. 12 and 13. At appellant's direction, Yarbrough rented a room at the Motel 6 for another night using money obtained in the robbery. They were given a different room, however, and appellant moved his belongings and the money to the new room. Appellant directed Yarbrough to go to the Quality Inn across the street and rent a room for a week there. Appellant gave Yarbrough money from the robbery to rent the room. Yarbrough took his belongings with him to the Quality Inn. Yarbrough stayed at the hotel until the police knocked on his door at about 2:00 the next morning. Yarbrough did not have any of the money from the robbery with him.

Plano police detective Brian Pfahning testified he was assigned to investigate the bank robbery. He obtained the initial information from bank employees that two African-American males were suspects and that after the robbery, they left on foot running east towards the Motel 6. Pfahning also reviewed the Bank's surveillance video of the robbery and part of the video taken the day before the robbery. Pfahning recognized Byron Yarbrough on the video. Pfahning returned to the police department and put together a photo line-up. He returned to the Bank with the photo line-up and had the employees view it. Two of the three employees he had view the line-up selected Yarbrough's picture. When Pfahning was later able to view the entire video of the day before the robbery, he also recognized appellant's picture. Officers had obtained information from a witness who had seen two men running and an exploded dye pack was located near the Motel 6. Therefore, the officers believed the suspects might still be in the area. An officer later determined that Yarbrough was registered at the Motel 6, which was two buildings away from the Bank. Pfahning obtained an arrest warrant for Yarbrough, but did not have one for appellant at that time.

–8–

While Pfahning was in the process of obtaining a search warrant for the motel room, the officers who were conducting surveillance on the room decided to knock on the door to see who was in it. Appellant was in the room. Pfahning went to the room with the search warrant after appellant was arrested. A patrol officer was keeping the room secure. McLeod was in the room, and other officers were also present. During the search, officers found two black ski masks, one of which was consistent with the mask worn by Yarbrough during the robbery and the other was consistent with the mask the second suspect wore. Officers also found hoodies that matched those the suspects wore; two pairs of gloves, both of which had red dye on them and matched the description in the video; a suitcase with men's clothing; men's toiletries; and a pair of sunglasses that match those in the video. Officers also found a red-stained $20-bill with a serial number matching the bait money and another $151 in bills also stained red. The pocket of the pants from which some money was recovered was stained red. The officers found a long-muzzled toy gun in the suitcase. Officers also found a cell phone on which there were pictures of appellant and Yarbrough holding money that has red dye on it.

## APPLICABLE LAW

In reviewing a challenge to sufficiency of the evidence to support a conviction, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). The trial court, as finder of fact, was the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we must defer to the fact finder's evaluation of those matters. *See Jackson*, 443 U.S. at 326. Reasonable inferences may be drawn from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *See Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim.

–9–

App. 2007). "[I]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. P. ANN. art. 38.14 (West 2005). The corroboration is not sufficient if it merely shows the commission of the offense. *Id.* In conducting our review, we eliminate all of the accomplice testimony from consideration and examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the offense. *See Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be other evidence tending to connect the defendant to the offense alleged in the indictment. *Id.* We look at the particular facts and circumstances of each case and consider the combined force of all the non-accomplice evidence that tends to connect the accused to the offense. *See Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

To prove appellant committed the offense of robbery, the State had to prove beyond a reasonable doubt that: (1) appellant, acting alone or as party; (2) in the course of committing theft; (3) with the intent to obtain or maintain control over the property; (4) intentionally or knowingly threatened or placed Biscarro in fear of imminent bodily injury or death. *See* TEX. PENAL CODE ANN. §§ 7.01(a), (b), 29.02(a)(2) (West 2011). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a). Each party to an offense may be charged with commission of the offense. *Id.* § 7.01(b).

–10–

In his sole issue, appellant contends the non-accomplice evidence is insufficient to corroborate Yarbrough's testimony that appellant actually robbed the Bank. The State responds that the non-accomplice testimony is sufficient to connect appellant to the robbery and establishes more than "guilt by association." We agree with the State.

Setting aside Yarbrough's testimony, the evidence shows that the day before the robbery, two men came into the Bank, about an hour or so apart, asked the same questions, and left after a short period of time. The men's behavior led the bank employees to believe the Bank had been cased for a robbery, and they warned the employees that would be working the next morning to be on the alert. Herrick identified appellant in open court as the first man to come into the Bank, and Pfahning identified appellant's picture from the bank surveillance video from the day before the robbery.

On the day of the robbery, two men came to the Bank. One approached Biscarro's station and demanded the money; the other remained at the door holding it open. The two men ran off together towards the Motel 6. Herrick found a telephone book still holding the door open after the two men fled. Witnesses saw an "explosion" of red dye, and a discharged dye pack was found near the Motel 6. Pfahning recognized Yarbrough's picture from the bank surveillance video taken the day before the robbery, and officers checking the area learned Yarbrough was registered at the Motel 6. When officers went to the room registered to Yarbrough, they found appellant and McLeod in the room. Yarbrough was not in the room and the officers were told he was staying at a different hotel. A search of the room revealed a suit case with only men's clothing, two ski masks, gloves and other clothing marked with red dye, a toy gun, sunglasses, money with stained red dye, a $20-bill from the bait pack, and a cell phone that had pictures of red-stained money and appellant and Yarbrough holding the money.

We conclude the non-accomplice evidence is sufficient to tend to connect appellant to the robbery. *See Castillo*, 221 S.W.3d at 693. And, viewing all of the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient beyond a reasonable doubt to show appellant committed the offense of robbery. *See* TEX. PENAL CODE ANN. §§ 7.01(a), (b), 29.02(a)(2); *Jackson*, 443 U.S. at 319); *Carrizales*, 414 S.W.3d at 742. We overrule appellant's sole issue.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120898F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDON LAWRENCE COOPER,
Appellant

No. 05-12-00898-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-81168-2011.
Opinion delivered by Justice Brown,
Justices O'Neill and Myers participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered this 11th day of June, 2014.

/Ada Brown/
ADA BROWN
JUSTICE